[Cite as *State v. Singleton*, 2016-Ohio-4696.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103478**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALAN SINGLETON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593884-A

**BEFORE:** S. Gallagher, J., E.A. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 30, 2016

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Jeffrey Schnatter
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

**{¶1}** Appellant Alan Singleton appeals his conviction and sentence. Upon review, we affirm.

**{¶2}** Appellant was charged under a three-count indictment with rape, gross sexual imposition and, as amended, kidnapping with a sexual motivation specification. Appellant waived his right to a jury trial, and the case proceeded to a bench trial.

**{¶3}** Prior to the start of trial, the court conducted a competency hearing of the victim, who was four years old. The court found the victim to be incompetent. The court then conducted a hearing on the state's notice of introduction of child victim's statements and determined that the victim's previous statements were admissible under Evid.R. 807.

**{¶4}** At trial, the victim's mother, L.B., testified that appellant came to her home unannounced on December 30, 2014, to visit with the victim, who is his child. L.B. testified that at some point during the visit, appellant told L.B. he was hungry. L.B. went to prepare food and left appellant and the victim in the third-floor bedroom where they were watching television. By the time L.B. returned to the bedroom, appellant was the only one in the room and had fallen asleep for the night.

**{¶5}** Appellant left the next morning, which was New Year's Eve. He told L.B. that he would be back and that she should go to the liquor store. L.B. bought a bottle of

Zinfandel. Appellant did not return. L.B. stated that it was "up in the air," "he don't tell the truth," and that she was contemplating what she was going to do for the night.

{¶6} According to L.B., that evening the victim went to her and said, "my dad do me like this" and described what appellant had done to her the previous evening. She took her fingers, put them down her panties, and made movements to demonstrate appellant's actions. The victim asked L.B., "is that bad?" L.B. testified that she was shocked. She testified she did not have a drink before the victim confided in her, but opened the bottle of Zinfandel after the disclosure. The next day, the victim repeated to L.B. what happened.

{¶7} L.B. testified that she called appellant and he said, "maybe someone went too far this time * * * told her to say it was me." L.B. told appellant she was taking the victim to the emergency room.

{¶8} L.B. eventually took the victim to the hospital. The sexual assault nurse examiner who examined the victim testified to her examination of the victim and to her findings, which included swelling, redness, and damaged tissue. She testified that the injuries observed were consistent with digital touching. She also testified that "[c]hildren typically don't cause injuries like that themselves, because it is painful."

{¶9} An interview of the victim took place at the Cuyahoga County Division of Children and Family Services ("CCDCFS"). Present for the interview were the victim, L.B., a social worker from the Sex Abuse Intake Department of CCDCFS, and a detective with the East Cleveland Division of Police.

{¶10} The social worker testified that the detective took the lead in questioning the victim during the interview. He further testified that only one person was asking the questions in order to limit the trauma to the child and to eliminate any confusion during the interview. The social worker stated that the detective was able to elicit the same information he would be looking for to aid his referral in the case.

{¶11} The social worker testified that a drawing was utilized during the interview and the victim pointed to the vaginal area and stated appellant had touched her there with his finger. The social worker testified that his purpose in the interview was to determine the safety of the child and whether the child required any follow-up psychological, mental health counseling, or medical services. He further testified that in order to make this assessment, it was important to know where, and with what, the victim was touched. The social worker recommended that the victim be seen by rape crisis.

{¶12} The detective testified she told the victim the purpose of the interview was "just to find out what had happened, why she had to go to the hospital." L.B., who is the victim's mother, was also interviewed. Both the social worker and the detective testified that L.B. was interviewed after the victim had been interviewed. The detective also met with appellant and obtained a sample of appellant's DNA to compare it against the sexual assault kit.

{¶13} Appellant testified in his defense. He acknowledged visiting with the victim on December 30, 2014. He testified he wanted to spend time with his child. He stated that when he got to the house, he "sat on the couch, watched TV for a minute" and

then said he was tired and went upstairs to bed.  He claimed the victim went upstairs and played for a couple of minutes, but he told her he was tired and she left.  He testified the victim returned a little later with a plate of food.  He testified that a song came on the television, he was thinking of dance steps, and he "tap[ped] her on the knee, 1-2-3, 4-5-6, 7-8" for three minutes.  He claimed he gave the victim a kiss on the cheek, she left, and he went to bed.  He stated he left for work in the morning.  Appellant claimed that the victim was trying to convey the dance beat to L.B., but that L.B. misconstrued this and the victim probably just agreed with L.B.'s accusations.  He claimed L.B. was "drunk" and was "mad" at him.

{¶14} The trial court found appellant not guilty of rape, guilty of gross sexual imposition, and guilty of kidnapping with a sexual motivation specification.  The court determined the latter two offenses were allied offenses, and the state elected to proceed with sentencing on the kidnapping count.  The court imposed a sentence of life with the possibility of parole after 15 years of time served.

{¶15} Appellant timely filed this appeal.  He raises five assignments of error for our review.

{¶16} Under his first assignment of error, appellant claims the trial court erred in determining the victim was incompetent to testify and in allowing the introduction of child witness statements under Evid.R. 807.

{¶17} Evid.R. 601(A) provides in relevant part:  "Every person is competent to be a witness except: * * * children under ten years of age, who appear incapable of receiving

just impressions of the facts and transactions respecting which they are examined, or of relating them truly." A trial court is required to conduct a voir dire examination of a child under ten years of age to determine the child's competence to testify. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 100. In making this determination, the court must consider the following:

> "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful."

*Id.*, quoting *State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991). The determination of a child's competence to testify is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Maxwell* at ¶ 100.

{¶18} In this case, the victim was four years old at the time of trial. During the competency hearing, the victim stated that she did not know the difference between what is real and what is make believe. Although she was able to relay certain impressions and recollect some information, she also provided responses demonstrating an inability to recollect other information. She provided inconsistent answers when asked if she understood what it meant to tell a lie. When asked if she could promise to tell the truth, she stated, "I don't know about that." The victim responded "huh" a number of times, and at one point asked for her "mommy."

{¶19} In assessing the victim's responses to the questioning, the trial court found that the victim had only a "marginal understanding" of the difference between the truth

and a lie, and the court did not believe the victim would "have the ability to testify during the course of a trial" and questioned the victim's ability "to understand" and to "relay competently" in the case. The court stated it was not confident it could rely on the answers or the testimony elicited from the victim. Upon considering the factors for a competency determination of a child, the court found the victim was incompetent to testify in the case.

{¶20} Although appellant argues that the trial court conducted a flawed competency hearing because the court failed to inquire if the victim recalled the incident or telling anyone about it, this was not a prerequisite to the court's determination. "[T]he responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them." *Frazier*, 61 Ohio St.3d at 251, 574 N.E.2d 483. Upon our review, we find no abuse of discretion by the trial court.

{¶21} Next, the trial court determined whether to allow statements of the victim to be introduced under Evid.R. 807, which recognizes a hearsay exception for child statements in abuse cases. The rule applies when a child, who is under the age of 12 at the time of trial or hearing, makes an out-of-court statement describing any sexual act that is performed on, with, or by the child, provided the following safeguards are met:

> (1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add

little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.

(2) The child's testimony is not reasonably obtainable by the proponent of the statement.

(3) There is independent proof of the sexual act or act of physical violence.

(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness.

Evid.R. 807(A). A trial court's decision to admit statements under Evid.R. 807 is reviewed for an abuse of discretion. *In re A.K.*, 2d Dist. Montgomery No. 26199, 2015-Ohio-30, ¶ 16.

**{¶22}** Evid.R. 807 does not contain any requirement that the declarant be shown to have possessed testimonial competency at the time of the out-of-court statement, and the Ohio Supreme Court has held that "a hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child's competence to testify." *State v. Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576, 906 N.E.2d 427, ¶ 22, 34.

**{¶23}** The record in this case reflects that the trial court reviewed the totality of the circumstances surrounding the victim's statement as required under Evid.R. 807(A)(1)

and found the statement satisfied the trustworthiness element of Evid.R. 807. Appellant argues that the victim's mother, L.B., was angry at him and provided inconsistent testimony as to when and how the allegation was made. However, this was a matter to be weighed by the trier of fact. The trial court recognized the challenges to L.B.'s credibility, but found that the statement given by the victim was spontaneous, internally consistent, and age appropriate; that there was no evidence that the victim was incapable of relating information accurately at the time of the statement; that there was no evidence the victim had any motive to fabricate her display and statement, and there was no questioning or coercion in obtaining the statement; and that the lapse of time between the act and the statement was approximately 24 hours.

{¶24} Furthermore, the remaining criteria of Evid.R. 807 were satisfied. When a child has been found not competent to be a witness, her testimony is "not reasonably obtainable" pursuant to Evid.R. 807(B)(2). *State v. Cardosi*, 122 Ohio App.3d 70, 75, 701 N.E.2d 44 (2d Dist.1997). There was independent corroboration of the sexual act contained in the nurse examiner's medical report. Finally, appellant does not challenge that the state provided proper notification of its intent to use the statement. The statement, therefore, was properly admitted under Evid.R 807.

{¶25} Appellant's first assignment of error is overruled.

{¶26} Under his second assignment of error, appellant claims the trial court violated his right to confrontation and due process when it allowed the CCDCFS social worker to testify regarding statements made by the victim during the interview.

Appellant argues that the questioning was done by the police detective and that the primary purpose of the interview, which occurred after the victim had undergone medical evaluation, was to gather information for the prosecution of appellant.

{¶27} "[A] statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Ohio v. Clark*, 576 U.S.___, 135 S.Ct. 2173, 2180, 192 L.Ed.2d 306 (2015). In determining whether a statement is testimonial, "the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id*., citing *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011).

{¶28} In this case, the primary concern was the safety of the victim and the need for any follow-up services. The social worker testified that in order to make his assessment, it was important to know where, and with what, the victim was touched. Although the questions were asked by the detective, the social worker testified he sought the same information that was elicited. The interview was conducted at a CCDCFS office and was a joint effort to limit trauma to the child. The detective testified that she informed the victim that the purpose of the interview was "just to find out what had happened, why she had to go to the hospital." There was no indication that the primary purpose of the conversation was to gather evidence for a criminal prosecution. Further, the victim was only four years old. "Statements by very young children will rarely, if ever, implicate the Confrontation Clause." *Clark* at 2182.

**{¶29}** Our review reflects that the primary purpose of the statement was not testimonial. Accordingly, appellant's Sixth Amendment rights were not violated. The second assignment of error is overruled.

**{¶30}** Under his third assignment of error, appellant claims he was denied effective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, the appellant must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 200, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. The defendant has the burden of proving his counsel rendered ineffective assistance. *Perez* at ¶ 223.

**{¶31}** Our review of the record reflects that defense counsel conducted a thorough cross-examination of the witness and adequately challenged the evidence against appellant. Defense counsel questioned the witness on her medical examination of the victim and the potential for injury caused during the medical examination. He also had the witness identify areas that did not demonstrate injury. Insofar as appellant claims defense counsel should have questioned the nurse examiner about the possibility of self-inflicted injury or an alternative explanation such as a yeast infection, we find defense counsel's actions fell within the scope of reasonable trial strategy, which does not

constitute a denial of effective assistance of counsel. *See State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 30. Further, upon the record before us, we are unable to find a reasonable probability that the result of the proceeding would have been any different. A review of the record reflects that testimony had been elicited from the witness that a strep infection can be mistaken for abuse. The trier of fact was free to weigh this testimony and the other evidence presented at trial. Appellant's third assignment of error is overruled.

{¶32} Under the fourth assignment of error, appellant claims he was denied due process because the state asserted incorrect sentencing alternatives resulting in the imposition of a longer sentence without consideration of a shorter sentence. Specifically, appellant argues that the state incorrectly asserted that the two sentencing options for the court were either a life sentence with parole eligibility after 15 years or life without the possibility of parole. Appellant further argues that the court was not made aware of a lesser sentence that he claims he was eligible for upon his assertion that the victim was released unharmed.

{¶33} Appellant was found guilty of gross sexual imposition, a felony of the third degree, and guilty of kidnapping, a felony of the first degree, with a sexual motivation specification. After the trial court found the offenses were allied offenses of similar import, the state elected to proceed to sentencing on the kidnapping count. The court imposed a sentence of life with the possibility of parole after 15 years of time served.

{¶34} R.C. 2905.01(C)(3) provides as follows:

If the victim of the [kidnapping] offense is less than thirteen years of age and if the offender also is convicted of * * * a sexual motivation specification * * * the offender shall be sentenced pursuant to [R.C. 2971.03] as follows:

(a) Except as otherwise provided in division (C)(3)(b) of this section, the offender shall be sentenced pursuant to that section to an indefinite prison term consisting of a minimum term of fifteen years and a maximum term of life imprisonment.

(b) If the offender releases the victim in a safe place unharmed, the offender shall be sentenced pursuant to that section to an indefinite term consisting of a minimum term of ten years and a maximum term of life imprisonment.

{¶35} A defendant must plead and prove the mitigating circumstance that the victim was released in a safe place unharmed as an affirmative defense. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 233. Here, appellant never argued that the victim was released unharmed as a mitigating circumstance. Further, the record reflects otherwise. Appellant was found guilty of committing gross sexual imposition against the victim. The nurse examiner testified to injuries consistent with digital touching, including swelling, redness, and damaged tissue observed on the victim. Accordingly, the trial court imposed the correct sentence upon the appellant. The fourth assignment of error is overruled.

{¶36} Under his fifth assignment of error, appellant claims his conviction is against the manifest weight of the evidence. When reviewing a claim challenging the manifest weight of the evidence, this court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its

way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶37} Initially, we recognize that appellant raises a challenge to both the gross sexual imposition count and the kidnapping count. Appellant was found guilty on each count. However, the offenses were found subject to merger. For purposes of R.C. 2941.25, a "'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis sic.) *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12. Because of the merger, appellant was not sentenced for gross sexual imposition or convicted of that offense.[1] Nevertheless, we find neither the verdict nor the conviction was against the manifest weight of the evidence.

{¶38} Appellant was found guilty of gross sexual imposition in violation of R.C. 2907.05(A)(4), which prohibits sexual contact with a child under the age of 13. Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(4), which, in relevant part, prohibits restraining the liberty of a child under the age of 13 for the purpose of engaging in sexual activity with the victim against the victim's will.

---

[1] *See, e.g.*, *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23; *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶ 17.

**{¶39}** Appellant incorporates his prior arguments, which have been addressed and rejected under review of his other assignments of error. He further claims that L.B.'s testimony was not credible and contained inconsistencies, that the physical evidence was misleading and improperly vetted to support the conclusion that he caused the victim's injury, and that conflicting evidence was presented.

**{¶40}** The trier of fact heard the evidence presented and was able to take into account inconsistencies in the testimony and to assess the credibility of the witnesses. The evidence established that the victim was four years old at the time of the alleged incident. Testimony was provided by L.B. concerning the statements and display by the victim reporting that appellant had rubbed her vaginal area with his fingers. The nurse examiner testified that she observed injuries consistent with digital touching, and which would have been painful to the victim. The social worker testified to the victim's report of the touching that was made during the victim's interview with the aid of a drawing. Upon the evidence presented, the trial court found that "there certainly was sexual contact of the vaginal area of the victim" and that "by virtue of the rubbing of the child's vaginal area, and the statement that this hurt" the court could find the elements of the offenses had been proven beyond a reasonable doubt. The court further found the evidence established the state's burden of proof that the offense was committed with a sexual motivation.

**{¶41}** Upon our review, we find appellant's conviction is not against the manifest weight of the evidence.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.        The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR