[Cite as *In re T.W.*, 2018-Ohio-3275.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106231**

**IN RE: T.W.**
**A Minor Child**

**JUDGMENT:**
REVERSED; VACATED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 16100472

**BEFORE:** S. Gallagher, J., E.T. Gallagher, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** August 16, 2018

**ATTORNEYS FOR APPELLANT**

Brian J. Smith
John A. Sivinski
Sivinski & Smith, L.L.C.
20545 Center Ridge Road, Suite 215
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Jillian J. Snyder
Assistant Prosecuting Attorney
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


**Also listed:**

**For Mother**

S.B., pro se
212 Lincoln Drive
Port Clinton, Ohio   43452

**For Father**

H.W., pro se
4914 Lindsey Lane
Cleveland, Ohio   44143

SEAN C. GALLAGHER, J.:

{¶1} T.W. appeals a delinquency adjudication for acts constituting: (1) kidnapping by force, threat, or deception under R.C. 2905.01(A)(4); (2) gross sexual imposition under R.C. 2907.05(A)(4), as the lesser included offense of statutory rape under R.C. 2907.02(A)(1)(b); and (3) forcible rape under R.C. 2907.02(A)(2). That adjudication is not sustained by sufficient evidence.

{¶2} This case presents a particularly difficult review in light of the fact that it involves a minor child as the named victim. Despite our concern for this child, or any child victim, we nevertheless must apply the law to the facts of the case, and accept the end result of the analysis.

{¶3} The only evidence in support of the delinquency adjudication is the child's disclosure made to her mother and father (who disagreed as to the extent and nature of that disclosure) and the child's statements to an emergency, pediatric social worker employed by the hospital where treatment was sought. The child's statements describing the alleged sexual acts were introduced under Evid.R. 807(A). The child disclosed to her mother and the social worker that T.W., the child's brother, asked her to perform fellatio on him and the victim placed her mouth on T.W.'s genitals. Both the mother and the social worker clarified that the child spoke of no force or compulsion. Father offered a more benign version of the disclosure, essentially claiming that the child was tattling on T.W. for saying "suck" and that any sexual connotation was injected through mother's questioning. There is no medical evidence or other physical evidence confirming the sexual abuse.

{¶4} In addition, the child's mother testified that she observed a behavioral change in the

four-year-old toward the end of 2014 — the child exhibited disruptive and "clingy" behavior and began wetting her bed. The state claimed that the trier of fact could infer from the behavioral changes that a sexual assault occurred, but concedes that the mother could not explain the possible causes of the behavioral change or whether the behavioral characteristics were indicative of sexual abuse. T.W. presented an expert who testified that the behavioral characteristics observed by the mother were not unique to abuse victims.

{¶5} We acknowledge that additional evidence was presented at an interlocutory evidentiary hearing conducted under Evid.R. 807, such as the testimony of Shannon Sneed from the Cuyahoga County Department of Child and Family Services (who did not testify at the adjudicatory hearing) and the investigating police officer Gregory Patterson (who did testify in a limited capacity, limited by Confrontation Clause issues). The trial court expressly precluded either of those witnesses from substantively testifying to the sexual misconduct or the child's statements during the final adjudicatory hearing.

{¶6} We cannot consider the evidentiary hearing evidence for the purpose of determining whether there is sufficient evidence in support of the adjudication of delinquency. The state could have appealed that interlocutory decision to suppress the evidence under R.C. 2945.67(A) in advance of the hearing if such evidence was necessary to a successful prosecution. *In re M.M.*, 135 Ohio St.3d 375, 2013-Ohio-1495, 987 N.E.2d 652, ¶ 48. As a result, there are two pieces of evidence used to adjudicate T.W. delinquent — the child's statements admitted under Evid.R. 807(A) through the mother's, father's, and a hospital social worker's testimony, and mother's statement that the victim exhibited behavioral changes at the end of 2014.

{¶7} In Ohio, Evid.R. 807 provides an exception to the general inadmissibility of hearsay uttered by a child under the age of 12 that describes any sexual act performed by, with, or on the

child.[1]   This exception applies if (1) the court finds that the totality of the circumstances around the making of the statement provides a particularized guaranty of trustworthiness comparable at least to Evid.R. 803 and 804; (2) the child's testimony is not reasonably obtainable by the proponent of the statement; (3) there is "independent proof" of the sexual act; and (4) the proponent of the statement has notified all other parties of the content of the statement at least ten days before the trial or hearing.   Evid.R. 807(A)(1)-(4).   The rule is stated in the conjunctive. In order for the out-of-court statements to be admitted under the rule, the proponent must demonstrate all of the above.

{¶8} In this case, there is no independent proof of the sexual act as a foundation for the evidence admitted at the adjudicatory hearing.   The only substantive evidence of a sexual act not derived from the child's out-of-court statements, according to the state, is the mother's observation that the child exhibited a behavioral change toward the end of 2014, approximately a year before she disclosed the alleged misconduct to the adults.   Sneed and Officer Patterson were precluded from testifying about their conversations with the child.

{¶9} Without expert testimony, the mother's observations of the child's behavioral changes are not independent proof as contemplated under Evid.R. 807(A)(3).   In *State v. Stowers*, 81 Ohio St.3d 260, 262, 1998-Ohio-632, 690 N.E.2d 881, it was recognized that expert testimony in sexual abuse cases is admissible to demonstrate that such behavior is consistent with those observed in sexually abused children in general.   That expert testimony is permitted because a lay person lacks any specialized knowledge about behavioral characteristics of child

---

[1]The state also references R.C. 2151.35(F) as a basis to admit the out-of-court statements made by the victim.   "R.C. 2151.35(F) is inconsistent with Article VIII of the Ohio Rules of Evidence and, as such, has no force or effect."   *In re Coy*, 67 Ohio St.3d 215, 1993-Ohio-202, 616 N.E.2d 1105, paragraph one of the syllabus. Evid.R. 807 is the exclusive mechanism for the admissibility of out-of-court statements by a child under the age of 12 at the time of the trial or hearing.

abuse victims and is unaware of how sexually abused children respond to sexual or other physical abuse. *Id.*, quoting *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989) ("'Incest is prohibited in all or almost all cultures and the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused.'"). Although mother's observations regarding her child's behavioral characteristics are admissible, the relevancy of such testimony is limited absent an expert qualified to explain the significance of the noted observations.

{¶10} The state nevertheless argues that the trier of fact is capable of inferring that the behavioral changes were caused by the sexual misconduct without expert testimony. If the state's argument was true, however, *Stowers* would not have permitted the use of expert testimony to explain the significance of the behavioral observations. Expert testimony is permitted only if the testimony "relates to matters beyond the knowledge or experience possessed by lay persons or it dispels a misconception common among lay persons." Evid.R. 702(A). If a lay person were capable of inferring the causal connection between sexual abuse and observed behavioral traits, no expert testimony would be permitted because the lay person was capable of formulating a conclusion based on the evidence presented without the assistance of expert testimony. *State v. Garcia*, 8th Dist. Cuyahoga No. 79917, 2002-Ohio-4179, ¶ 44; *Reynolds v. Bauer*, 2d Dist. Montgomery No. 21179, 2006-Ohio-2912, ¶ 21 (the justification for expert testimony is concerned with the jury's ability to "draw proper inferences" from the facts in evidence). The foundation of the *Stowers* decision precludes us from accepting the state's argument, and tellingly, the state has not cited a case in which any court has held that a lay person may infer sexual or physical abuse from a victim's behavior without an expert opinion.

{¶11} On this point, the state cites *State v. Robertson*, 9th Dist. Summit No. 19072, 2000

Ohio App. LEXIS 276, 14-15 (Feb. 2, 2000), claiming that a trier of fact can infer the occurrence of a sexual assault from behavioral changes without expert testimony. In that case, however, the state presented expert testimony to draw the necessary connection, and more important, the offender had confessed to the misconduct, rendering the need for further independent proof irrelevant. *Id.* at 14 (noting that the state presented a psychologist to testify that the victim's behavior was indicative of sexual abuse); *accord In re S.H.W.*, 2d Dist. Greene No. 2015-CA-25, 2016-Ohio-841, ¶ 37. A confession to committing a crime constitutes independent proof. *See, e.g., State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151 (under the independent proof prong of Evid.R. 801(D)(2)(e) for the purposes of proving a conspiracy, defendant's statements admitting to the conspiracy were independent proof of the conspiracy for the purposes of introducing the coconspirator's statements at defendant's trial).

{¶12} In this case, there is no expert testimony demonstrating that the observed behavioral characteristics are independent proof of a sexual act having occurred and there is no confession. In response, the state claims that the child's behavioral changes can be interpreted in conjunction with her statements describing the sexual act under the Evid.R. 807(A) analysis. *See, e.g., State v. Owens*, 2d Dist. Montgomery No. 17394, 2000 Ohio App. LEXIS 641, 37 (Feb. 25, 2000) (victim's behavior when "compounded" with the victim's statements regarding the sexual acts considered "independent" proof of the sexual acts); *In re A.K.*, 2d Dist. Montgomery No. 26199, 2015-Ohio-30, ¶ 16 (relying on *Owens*); *State v. Hall*, 9th Dist. Summit No. 20089, 2001 Ohio App. LEXIS 178, 14 (Jan. 24, 2001) (victim's statements about the sexual act using anatomically correct dolls constituted "independent" proof of the sexual acts); *but see State v. Singleton,* 2016-Ohio-4696, 69 N.E.3d 118, ¶ 23 (8th Dist.) (sexual assault nurse's examination revealing physical evidence of sexual abuse constituted independent proof of the sexual act).

We decline to adopt the proposition that an alleged victim's statements describing the sexual act can provide the context necessary to demonstrating the "independent proof."

{¶13} Proof of the sexual act must be independent of the child's statements describing the sexual act. The term "independent proof" under Evid.R. 807(A)(3) "is comparable to the independent proof requirement of the co-conspirator exception under Evid.R. 801(D)(2)(e)." 1991 Staff Notes, Evid.R. 807(A)(3). Traditionally, the "bootstrapping rule" from Evid.R. 801(D)(2)(e) precludes the state from presenting evidence of a conspiracy by admitting statements of a coconspirator that established the conspiracy in the first place. *Bourjaily v. United States*, 483 U.S. 171, 177, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Likewise, the state cannot offer "independent proof" of a sexual assault having occurred that is solely based on an inference that exists through consideration of the child's statements describing the sexual act, statements that would otherwise be inadmissible without the independent proof.

{¶14} The mother's behavioral observations standing alone cannot be considered independent proof of a sexual assault having occurred, especially considering the state's argument that the mother only testified as to her observations but could not explain what caused the change or the significance of the characteristics noted. On this point, expert testimony was required to establish the causal connection because a lay person would ordinarily be unaware of how sexually abused children might respond to sexual or other physical abuse and because a lay person does not possess the specialized knowledge or training to determine which behavioral characteristics would be indicative of an assault. *Stowers*, 81 Ohio St.3d at 262, 1998-Ohio-632, 690 N.E.2d 881. Further, by using the child's statements as the context within which to consider the behavioral observation testimony, the state is bootstrapping — relying on the child's statements as the foundation of independent proof of the sexual act before

determining the admissibility of those statements. [2] The state failed to demonstrate the admissibility of the child's out-of-court statements describing the sexual act, and those statements should have been excluded.

{¶15} The emphasis and detail the dissent places on the veractiy of the child suggests that the child should have been deemed competent to testify in this case. The child's "detailed account" proffered through hearsay, is not relevant to the issues preserved for this appeal, which focuses on the admissibility of the child's statements under Evid.R. 807. "A hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child's competence to testify." *State v. Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576, 906 N.E.2d 427, syllabus. Thus, the child's ability to truly relate her impressions of the facts and transactions is irrelevant to the admissibility of the hearsay. Although the record is unclear as to the reason, the trial court deemed the child incompetent to testify at trial under Evid.R. 601 after conducting an in camera interview of the child and the state did not timely appeal that decision. We have not been asked to review the competency determination.

{¶16} Generally, any error with the admission of evidence would result in a new trial. *See, e.g., State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981, ¶ 40 (affirming appellate remand for a new trial without the tainted evidence). However, even if the problems with Evid.R. 807(A) were ignored, the evidence presented at the adjudicatory hearing was

---

[2]The dissent's reliance on Sneed's testimony as establishing the independent proof of the sexual act is misplaced. Sneed's assessment of the child's veracity cannot be a basis to affirm the adjudication. The child's veracity cannot be bolstered by another witness. *Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220, at syllabus. Further, as the dissent concedes, the conclusion that the state presented "independent proof" of the sexual act is entirely dependent on the child's statements describing the act in detail, statements that are not admissible without independent proof of the sexual act. The child's statements accurately describing the sexual acts of fellatio that form the basis of the charges do not constitute independent proof of the sexual act having occurred — those are still the child's statements "describing any sexual act performed by, with, or on the child * * *" that are precluded unless the state presents independent proof of the sexual act. Evid.R. 807(A).

insufficient to prove that T.W. committed acts constituting kidnapping by force, threat, or deception under R.C. 2905.01(A)(4), gross sexual imposition under R.C. 2907.05(A)(4), or forcible rape under R.C. 2907.02(A)(2) as a matter of law.

{¶17} The standard of review for questions involving the sufficiency of the evidence in delinquency adjudications is the same applied for felony defendants: the evidence and all reasonable inferences are reviewed in favor of the state to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *In re D.C.*, 8th Dist. Cuyahoga No. 105433, 2018-Ohio-163, ¶ 3, citing *In re Washington*, 81 Ohio St.3d 337, 339, 1998-Ohio-627, 691 N.E.2d 285, and *In re J.S.*, 8th Dist. Cuyahoga No. 102800, 2015-Ohio-4990, ¶ 13. With respect to the kidnapping and rape charges, the state was required to demonstrate some element of force. But, there is no evidence that T.W. forced or compelled his sister to perform fellatio, or otherwise restrained her liberty in the process. The evidence, considered in the light most favorable to the state, established that T.W. asked his sister to perform fellatio, and she performed the sexual act. Sneed and Officer Patterson were precluded from testifying as to the child's statements and, thus, cannot be considered in determining whether the state presented sufficient evidence.

{¶18} The state contends that the force or restraint aspect of the delinquency adjudication was demonstrated based on the principle established in *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), and *State v. Dye*, 82 Ohio St.3d 323, 1998-Ohio-234, 695 N.E.2d 763. *See, e.g., State v. Eads*, 8th Dist. Cuyahoga No. 87636, 2007-Ohio-539, ¶ 12 (relying on *Eskridge* and its progeny as a basis to find that the state demonstrated force). In that line of cases, a person may be convicted of rape with force under R.C. 2907.02(A)(2) without evidence of the express or overt threat of harm or without evidence of significant physical restraint, if the offender is in a

position of authority over the victim. *Id.* at 329. The element of force can be implied if the state demonstrates that the victim's will was overcome by fear or duress based on the offender's position of authority. *Id.* at 327. In this case, the state failed to demonstrate the applicability of *Eskridge* and its progeny.

{¶19} In *In re L.R.F.*, 2012-Ohio-4284, 977 N.E.2d 138, ¶ 22 (8th Dist.), a ten-year-old cousin was accused of "forcing" his six-year-old relative to perform fellatio on him. The older relative threatened to tell the victim's parents that the younger victim kissed another boy. *Id.* at ¶ 3. Similar to the current circumstances, there was no evidence of overt or psychological force, no evidence of a filial relationship between the offender and alleged victim, and no evidence of the offender having authority over the alleged victim. *Id.,* citing *In re N.K.*, 8th Dist. Cuyahoga No. 82332, 2003-Ohio-7059, and *In re D.L.*, 3d Dist. Crawford No. 3-11-08, 2012-Ohio-1796, ¶ 27. The only evidence presented was that the offender, who was under the age of 13, "asked" the alleged victim to perform fellatio and she complied. *Id.* This was deemed insufficient to sustain the rape with force conviction. *Id.* The state maintained that force was implied under *Dye* and its progeny, but that argument was rejected based on the age of the offender and the state's inability to demonstrate that the older relative held a position of authority over the younger one. *Id.* at ¶ 22.

{¶20} In this case, the mother claimed that the child exhibited behavioral changes before T.W.'s 13th birthday. The state attempted to demonstrate the sexual conduct in part based on that evidence. As a result, the state cannot rely on *Eskridge* or its progeny in demonstrating that force was proven beyond a reasonable doubt. In *In re L.R.F.,* the court declined to extend the holdings from *Eskridge* and *Dye* to offenders under the age of 13 at the time of the alleged misconduct.

**{¶21}** Regardless, even if T.W. was older than 13 at the time of the alleged misconduct, there was no evidence that he was in a position of authority over his younger sister for the purposes of implying force. We cannot create a per se rule, as the state suggests, that "force" under R.C. 2907.02(A)(2) is demonstrated whenever sexual assaults are committed by an older relative. There must be some evidence, for instance, that the offender has inherent power through his position of authority over the victim, or that the force used was subtle and psychological stemming from the filial-like relationship.

**{¶22}** In this case, the mother testified that the two children were always supervised by adults. This demonstrates that T.W. was not burdened with the responsibility of caring for or watching over his sister. Further, the sister was not told that T.W. was an authority figure. *See, e.g., Dye*, 82 Ohio St.3d 323, 328, 1998-Ohio-234, 695 N.E.2d 763, citing *Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (the absence of parental relationship is not dispositive; the state can demonstrate psychological force when the state demonstrates the offender is an authority figure and the parents tell the victim to listen to the offender in the parents' absence). The state failed to introduce any evidence that T.W.'s sister was forcibly compelled to perform fellatio, was forcibly restrained in the process, or had submitted to the sexual act through psychological or implied force as defined in *Eskridge* and its progeny.

**{¶23}** Finally, the trial court improperly considered gross sexual imposition as a lesser included offense of statutory rape under R.C. 2907.02(A)(1)(b), which is unconstitutionally vague when applied against an offender who is under the age of 13 at the time of the alleged misconduct. *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, 950 N.E.2d 528, syllabus. We acknowledge that gross sexual imposition may be a lesser included offense to statutory rape. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 83-86. Consideration

of the lesser included offense is required, however, "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *Ohio v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

{¶24} The evidence introduced in this case demonstrated that the child performed fellatio on T.W. Rape is defined in terms of a person engaging in sexual conduct with another, which is further defined to include vaginal or anal penetration, cunnilingus, or fellatio. R.C. 2907.01(A). Gross sexual imposition is defined in terms of sexual contact, meaning the touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B). The acts of rape do not constitute acts of gross sexual imposition. *State v. Hlavsa*, 8th Dist. Cuyahoga No. 93810, 2011-Ohio-3379, ¶ 21, citing *State v. Johnson*, 36 Ohio St.3d 224, 522 N.E.2d 1082 (1988); *State v. Reid*, 8th Dist. Cuyahoga No. 83206, 2004-Ohio-2018.

{¶25} A defendant is not entitled to seek a jury instruction on the lesser included offense of gross sexual imposition when the evidence indicates that a rape occurred. *Lynch* at ¶ 83-86. In *Lynch*, for example, the state demonstrated that the defendant vaginally penetrated the victim. *Id.* The defendant sought an instruction on gross sexual imposition, arguing that the jury could find that no penetration occurred when the defendant kissed and touched the victim's genitals. *Id.* The defendant, however, confessed to investigating officers that there was slight penetration. *Id.* In light of that evidence, the Ohio Supreme Court concluded that the lesser included offense of gross sexual imposition was not supported by the evidence. *Id.* Thus, although it is conceivable that some sexual contact could occur in facilitating the sexual conduct,

there must be evidence of the sexual contact. Acts constituting sexual conduct are not considered acts constituting sexual contact. To hold otherwise would invalidate every case in which a defendant was denied the opportunity to have the trier of fact consider gross sexual imposition during a rape trial for the want of evidence establishing sexual contact. *See, e.g., Lynch.*

**{¶26}** In this case, the only evidence presented involved allegations of the child performing fellatio on T.W., generally defined as a "sexual act in which the mouth or lips come into contact with the penis." *State v. Warman*, 12th Dist. Butler No. CA2016-02-029, 2017-Ohio-244, ¶ 36, citing *State v. Vansickle*, 12th Dist. Fayette No. CA2013-03-005, 2014-Ohio-1324, ¶ 88; *State v. Carson*, 8th Dist. Cuyahoga No. 103286, 2016-Ohio-1126, ¶ 18. There was no evidence demonstrating any form of sexual contact, as defined under R.C. 2907.01(B). The state presented an all-or-nothing case for rape as defined under R.C. 2907.01(A)(1)(b), and in this case, consideration of gross sexual imposition as a lesser included offense of statutory rape was improper. *Lynch,* 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, at ¶ 86. Since the trial court acquitted T.W. of statutory rape and there was no evidence demonstrating any sexual contact having occurred, the adjudication of delinquency for acts constituting gross sexual imposition cannot be sustained.

**{¶27}** As a result of the foregoing, we reverse and the case is remanded to the trial court to vacate the delinquency adjudication.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.     A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

LARRY A. JONES, SR., J., CONCURS;
EILEEN T. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION

EILEEN T. GALLAGHER, P.J., DISSENTING:

{¶28} I respectfully dissent because I believe T.W.'s delinquency adjudication is supported by sufficient evidence and is not against the manifest weight of the evidence. I also believe T.W.'s hearsay statements were admissible under Evid.R. 807.

{¶29} For clarity's sake, it should be mentioned that T.W. raised the following five assignments of error:

> 1. The trial court erred to the prejudice of T.W. when it allowed [Mother] to testify regarding behaviors of J.W. that she believed were not normative or that were evidence of sexual abuse without establishing that [Mother] had the requisite knowledge to identify such behaviors or their relation to sexual abuse and without a state expert to do so.
>
> 2.   The trial court erred to the prejudice of T.W. when it permitted into evidence hearsay statements of J.W. contrary to Evid.R. 807.
>
> 3.   The trial court's conviction of forcible rape and kidnapping lacked evidentiary support and was contrary to both the sufficiency and manifest weight of the evidence.
>
> 4. The trial court erred in convicting T.W. of gross sexual imposition, which is constitutionally vague, is not a lesser included offense of statutory rape in these circumstances, and which is contrary to both the sufficiency and manifest weight of the evidence.
>
> 5.   The trial court failed to merge allied offenses of similar import.

The majority's decision to reverse the trial court's judgment is based primarily on the third assignment since the majority believes the evidence presented at the adjudicatory hearing was inadequate to sustain T.W.'s delinquency adjudications.

{¶30} However, before addressing the manifest weight and sufficiency arguments, the evidentiary issues in the case should be addressed in order to avoid confusing the evidentiary questions under Evid.R. 807 with the state's burden of proof at the adjudicatory hearing. T.W. argues in the second assignment of error that the trial court erred in allowing witnesses to testify about out-of-court statements J.W. made regarding the abuse. The trial court concluded that J.W.'s statements were admissible under Evid.R. 807 after holding an evidentiary hearing exclusively on that issue.

{¶31} It is important to note that we review the trial court's decision to admit hearsay under Evid.R. 807 for an abuse of discretion. *State v. Singleton*, 8th Dist. Cuyahoga No. 103478, 2016-Ohio-4696, ¶ 21. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 8th Dist. Cuyahoga No. 105577, 2018-Ohio-1294, ¶ 22.

{¶32} Under Evid.R. 807, an out-of-court statement made by a child who is under 12 years of age at the time of trial describing any sexual act performed by, with, or on the child is not excluded as hearsay where (1) the child's testimony is not reasonably obtainable by the proponent of the statement, (2) there is independent proof of the sexual act, and (3) the court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as

statements admitted pursuant to the rules providing the general hearsay exceptions. Evid.R. 807(A); *Singleton* at ¶ 21.

{¶33} The majority found that J.W.'s hearsay statements failed to meet the requirements for admissibility under Evid.R. 807 because there was no independent proof of the sexual act. Notably, the trial court found that "J.W.'s clinginess, outbursts of anger, and disturbed sleep" provided independent proof of sexual assault. I agree with the majority that these behaviors, by themselves, are not enough to establish independent proof, particularly in the absence of expert testimony to explain their significance. The record nevertheless contains independent proof of sexual abuse beyond the alleged changes in J.W.'s behavior.

{¶34} J.W.'s knowledge of the appearance and functioning of male sexual organs is enough to satisfy the independent proof requirement of Evid.R. 807. Shannon Sneed ("Sneed"), a social worker with CCDCFS, testified at the Evid.R. 807 evidentiary hearing that she interviewed J.W. approximately two weeks after J.W. disclosed the abuse to her parents. Sneed questioned J.W. by herself in the kitchen of her home while her parents waited in the basement. Regarding the interview, Sneed testified, in part:

> Then I said, why did she go to the hospital? And she said that [T.W.] makes her suck him. And at that point I got a forensic drawing of a male and asked her where she sucked and she said — she pointed to the penis and said she put her mouth on that part of the body.
>
> \*　　\*　　\*
>
> She said that they go in the basement and he pulls his pants down and she sucks him. She said this happened five to seven times, but she couldn't remember exactly how many. And she said that it always happens in the basement. And she also said that he told her not tell anyone, but she wanted — but she told her family anyway.

(Sept. 21, 2016 tr. 105.)

**{¶35}** Sneed explained there are five factors she considers in making a disposition on allegations of sexual abuse and that there are three possible dispositions. A disposition is "unsubstantiated" if there is no evidence that the abuse or neglect occurred. A disposition is "substantiated" if there is medical evidence, such as DNA evidence, to substantiate the allegations. In this case, Sneed determined that J.W.'s allegations were "indicated," meaning that although there was no medical evidence corroborating the claims, the allegations were reported consistently, and the victim was credible. (Sept. 21, 2016 tr. 109-110.)

**{¶36}** With respect to the factors considered in making a disposition, Sneed explained:

> There are five key factors that we base our disposition on. There is access, the access that the alleged perpetrator has to the victim. Number two is strategy for enticement or force, does it match up with what the victim is saying. Three, secrecy. Whether or not the alleged perpetrator told the victim not to tell anyone or threatened him or her in any way. Number four is the detail of the disclosure that the victim is able to provide. And five is the social context of what the child is describing.

(Sept. 21, 2016 tr. 108-109.)

**{¶37}** Applying these factors, Sneed explained that T.W. had access to J.W. because they were unsupervised in the basement of their home. T.W.'s strategy was to take advantage of the unsupervised access in the basement. Sneed found the secrecy factor was met because T.W. instructed J.W. not to tell anyone. Although J.W. was only five years old, she provided a detailed account of the abuse. And finally, Sneed found it plausible that the abuse occurred in the basement because they were left unsupervised in the basement for periods of time. (Sept. 21, 2016 tr. 105.)

**{¶38}** In addition to Sneed's testimony, Officer Patterson testified that during his investigation, he asked J.W. if anything came out of [T.W.] while she was sucking, and she told him that "[T.W.] peed." (Sept. 21, 2016 tr. 81.) Thus, although J.W. was only five years old,

she demonstrated an awareness of the appearance and sexual function of male genitalia that was not appropriate for her age.

{¶39} Furthermore, there was no evidence that J.W. had a motive to lie or to fabricate accusations against T.W., and J.W. spontaneously reported the abuse to her parents. A five-year-old child could not spontaneously tell her parents that her brother made her suck his penis, describe the act with detail, and know the sexual function of the penis unless she had a sexual experience with it. Therefore, I believe this evidence was sufficient independent proof of a sexual act.

{¶40} I also disagree with the majority's conclusion that the adjudications finding T.W. delinquent of rape and kidnapping were not sustained by sufficient evidence and were against the manifest weight of the evidence.

{¶41} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶42} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks

whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶43} T.W. was adjudicated delinquent for having committed an act that would constitute kidnapping in violation of R.C. 2905.01(A)(4), if committed by an adult. R.C. 2905.01(A)(4), provides, in relevant part:

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen * * *, by any means, shall * * * restrain the liberty of the other person, * * * [t]o engage in sexual activity, as defined in [R.C. 2907.01], with the victim against the victim's will[.]

T.W. argues there was no evidence that T.W. either removed J.W. to the basement or restrained her liberty for the purposes of engaging in sexual activity. He asserts the only evidence was that T.W. asked J.W. to perform the activity.

{¶44} However, the force and violence necessary to commit the crime of rape depends upon the age, size, and strength of the parties, and their relation to each other. *Ohio v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus. Ohio courts have held that proof of physical restraint is not required in cases involving the rape of small children where the child's liberty may be restrained through the inherent social or psychological pressures of a "trusted family member" who is "bigger and older than the child." *State v. May*, 8th Dist. Cuyahoga No. 94075, 2010-Ohio-5841, ¶ 19; *see also State v. Weems*, 8th Dist. Cuyahoga No.

102954, 2016-Ohio-701, ¶ 25. Therefore, the lack of physical restraint, by itself, does not establish insufficient evidence of kidnapping in this case.

{¶45} T.W. was adjudicated delinquent of rape in violation of R.C. 2907.02(A)(1), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.01(A) defines "sexual conduct" as including fellatio. As previously stated in relation to kidnapping, the physical force element of rape need not be overt because a small child can be overcome by subtle, psychological forces. *Eskridge* at 58-59. Although T.W. was not J.W.'s father, he was older and had significantly more power than J.W.

{¶46} In *State v. Dye*, 82 Ohio St.3d 323, 329, 695 N.E.2d 763 (1988), the Ohio Supreme Court held that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force * * * without evidence of express threat of harm or evidence of significant physical restraint." In reaching this conclusion, the court explained that "a child cannot be found to have consented to rape." *Id*. at 327.

{¶47} J.W. told Mother and Nakita Heard that T.W. wanted her to "suck him" and that she complied with his request. Because J.W. was only five years old, she was incapable of consenting to sexual conduct. Therefore, there was sufficient evidence that T.W. engaged in conduct that would be considered rape and kidnapping, if committed by an adult.

{¶48} And T.W.'s rape and kidnapping convictions are not against the manifest weight of the evidence. As previously stated, J.W. had no reason to fabricate the allegations of abuse and she reported the abuse spontaneously. Additionally, J.W.'s descriptions of the abuse were consistent every time she reported them. Nakita Heard, a social worker who interviewed J.W.

at University Hospitals the day she reported the abuse to her parents, testified at the adjudicatory hearing about J.W.'s description of the abuse. She testified, in relevant part:

> When she was telling me that he told her to suck it, she stood up and she pointed to her genitalia area and like pointing like he told me to suck it, and she stood up and pointed to that area.

{¶49} The consistency with which J.W. reported the abuse to her parents and health care providers at University Hospitals coupled with her spontaneous report of the abuse makes J.W.'s hearsay account of the abuse very credible. Moreover, there was no motive for this five-year-old girl to falsely accuse her brother of wrongdoing. Therefore, I would find the delinquency adjudications are not against the manifest weight of the evidence, and I would affirm the delinquency adjudications.